**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARSHA JAREMENKO,<br>Plaintiff,<br><br>v.<br><br>PARKLAND MANOR LLC,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No.: 5:26-cv-01080 |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **July 27, 2026**

## I. OVERVIEW

Plaintiff Marsha Jaremenko, as Executrix of the Estate of Decedent Demetrio Jaremenko, brings this action against Defendant Parkland Manor, LLC, a nursing facility located in Allentown, Pennsylvania. Plaintiff alleges that during Decedent's residency at Defendant's facility from January 2024 to April 2025, Defendant's negligent care caused Decedent to suffer at least twelve falls, resulting in serious injuries including broken ribs, lacerations, and extensive bruising. *See generally* Compl. (ECF No. 1). Plaintiff asserts claims for gross and reckless negligence, willful misconduct, breach of contract, and punitive damages.

Defendant moves to dismiss Plaintiff's request for punitive damages and breach-of-contract claim. *See generally* Def.'s Mem. of L. in Supp. of Mot. to Dismiss ("Def.'s Mem in Supp.") (ECF No. 17). For the reasons that follow, the Motion is **GRANTED in part**.

## II. BACKGROUND[1]

### a. Factual Background

Decedent Demetrio Jaremenko was a 75-year-old man who resided with his wife, Marsha Jaremenko, in Phillipsburg, New Jersey. *See* Compl. ¶ 4. Decedent suffered from dementia and Parkinson's disease, conditions that significantly impaired his cognitive function, mobility, and balance. *See id.* ¶ 5.

On or about January 5, 2024, Plaintiff and Decedent entered into a Resident Agreement for Personal Care ("Agreement") with Defendant for Decedent's admission to and residency at Defendant's facility located at 4636 Crackersport Road, Allentown, Pennsylvania. *See id.* ¶ 7. Pursuant to the Agreement, Defendant agreed to provide Decedent with skilled nursing care, supervision, assistance with activities of daily living, a safe living environment, and assistance with transfers in and out of bed. *See id.* ¶ 8. In exchange, Plaintiff agreed to pay Defendant $6,500.00 per month. *See id.* ¶ 9. The Agreement further stipulated that mediation must be completed before either party could pursue litigation or other legal processes for cause arising from the Agreement. *See id.* ¶ 28.

Beginning in January 2024 and continuing through April 2024, Decedent suffered at least twelve falls while under Defendant's care. *See id.* ¶ 12. Plaintiff alleges that each fall was preventable and resulted from Defendant's failure to maintain functional bed alarms, adequately staff the facility, implement appropriate fall prevention protocols, and properly supervise Decedent. *See id.* ¶¶ 13-18. As a direct result of these falls, Decedent sustained broken ribs, lacerations to his head and leg, extensive bruising, and hip pain. *See id.* ¶ 19. Plaintiff also alleges that Decedent was subjected to abusive treatment by staff during nighttime hours. *See id.* ¶ 23.

[1] The Court accepts Plaintiff's factual allegations as true, as we must at this early stage.

Decedent's family removed him from Defendant's facility in April 2024 due to the accumulation of his injuries and dangerous conditions at the facility. *See id.* ¶ 26. He passed away on September 24, 2024, from causes unrelated to this action. *See id.* ¶ 27.

**b. Procedural Background**

Following Decedent's removal from the facility, Plaintiff's counsel made repeated attempts to engage Defendant in the contractually obligated mediation process. Written requests were transmitted on February 3, 2025, February 14, 2025, April 7, 2025, May 3, 2025, June 19, 2025, and September 17, 2025. *See id.* ¶ 30. Defendant failed and refused to respond to any of these requests. *See id.* ¶ 31.[2]

Plaintiff filed a Complaint, asserting claims for negligence (Count I), breach of contract (Count II), and punitive damages (Count III). *See* Compl. (ECF No. 1). Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6), seeking dismissal of Plaintiff's punitive damages claim and all allegations of grossly negligent, reckless, and willful misconduct, as well as dismissal of Plaintiff's breach of contract claim as duplicative of her negligence claim. *See generally* Def.'s Mem in Supp. (ECF No. 17). Plaintiff filed a brief in opposition. *See generally* Pl.'s Br. in Opp'n of the Mot. to Dismiss ("Pl.'s Br. in Opp'n") (ECF No. 18).

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

[2] Additionally, when Plaintiff personally went to Defendant's office in February 2026 to obtain Decedent's medical records, Defendant's administration refused to produce them. *See* Pl.'s Br. in Opp'n, at 3.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV. ANALYSIS

### A. Punitive Damages and Allegations of Grossly Negligent, Reckless, and Willful Misconduct

Defendant moves to strike all related allegations of gross negligence, recklessness, and willful misconduct from paragraphs 11 and 36 (Count II) and to dismiss the punitive damages and Wherefore Clauses on the grounds that the Complaint fails to plead sufficient facts to support a punitive damages claim under Pennsylvania law. *See* Def.'s Mem in Supp., at 4-6. The Court declines to dismiss these claims at this stage.

Under Pennsylvania law, punitive damages are an extreme remedy available only in exceptional cases where the defendant's conduct is outrageous due to an evil motive or reckless indifference to the rights of others. *See Keen v. C.R. Bard, Inc.*, 480 F. Supp. 3d 624, 646 (E.D. Pa. 2020). Mere negligence or even gross negligence is thus insufficient to support a punitive damages award. *See Est. of Goldberg v. Nimoityn*, 193 F. Supp. 3d 482, 494 (E.D. Pa. 2016). To establish a basis for punitive damages, the tortfeasor's conduct must be "committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured."

*Bert Co. v. Turk*, 298 A.3d 44, 61 (Pa. 2023). Conduct is sufficient only when a defendant knows, or has reason to know, of facts creating a high degree of risk of physical harm to another and deliberately proceeds in conscious disregard of that risk. *See Enari v. Davranov*, No. 3:24-CV-01101, 2024 WL 1265749, *15 (M.D. Pa. May 8, 2026) (citing *SHVCoal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 704 (Pa. 1991)). The "focus is on the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties." *FCS Cap. LLC v. Thomas*, 579 F. Supp. 3d 635, 661 (E.D. Pa. 2022) (quoting *Rizzo v. Haines*, 555 A.2d 58, 69 (Pa. 1989)). The actor's state of mind is also relevant, and the "act or omission must be intentional, reckless, or malicious." *Id.* (quoting *Rizzo*, 555 A.2d at 69).

Defendant's argument is not without merit. Most of the allegations in the Complaint--the staffing deficiencies, inadequate care planning, failures to document and report--sound, as pleaded, in ordinary negligence. The allegation in paragraph 23 that Decedent was subjected to abusive treatment by staff during nighttime hours is entirely unsupported by any factual detail, and without an assertion of the abusive treatment by the Plaintiff cannot stand. A bare assertion of that kind, without more, does not satisfy the pleading standard. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *cf. Smith v. Brown*, 423 A.2d 743, 745 (Pa. Super. Ct. 1980) (holding that plaintiff failed to plead sufficient facts to indicate that defendant's conduct was outrageous where the state court complaint contained only conclusory language).

The Court nonetheless finds that three specific factual allegations, considered together and accepted as true, raise the punitive damages claim above the speculative level and render it plausible on its face. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. First, Defendant's own records documented Decedent as suffering from conditions that significantly impaired his cognitive function, mobility, and balance. *See* Compl. ¶ 5. Defendant therefore knew of the specific

risk that subsequently materialized. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994) (requiring that defendant know or have reason to know of facts creating a high degree of risk). Second, Plaintiff alleges that staff members routinely ignored, turned off, or failed to activate bed alarms altogether, in violation of Decedent's care plan. *See* Compl. ¶ 15. The deliberate silencing of a safety alarm on a patient documented as totally immobile is an affirmative act taken with knowledge of the consequence it creates, not an act of mere inattention. *See Polselli*, 23 F.3d at 751. Third, Decedent suffered at least twelve falls across approximately three months, with the same alarm failures recurring throughout. *See* Compl. ¶ 12. A pattern of twelve falls involving a patient whose total immobility was documented at admission, with the same instrument of safety failing on each occasion, plausibly supports at the pleading stage an inference of conscious disregard rather than mere inadvertence. *See Takes v. Metro. Edison Co.*, 695 A.2d 397, 400 n.4 (Pa. 1997). Repeated non-functional alarms across a multi-month period, on a totally immobile patient who fell twelve times, sufficiently grounds the broader allegation in observable fact.

The Court is also mindful of the equitable posture of this case. Plaintiff was contractually barred from filing suit until mediation was completed. *See* Compl. ¶ 28. Defendant refused to engage in that process for nine months despite six written demands. *See id.* ¶¶ 30-31. Defendant also subsequently refused to produce Decedent's medical records when Plaintiff personally sought them. *See* Pl.'s Br. in Opp'n at 3. The evidence most directly bearing on Defendant's state of mind, the incident reports, staffing records, internal communications, alarm maintenance logs, and the facility's regulatory history, is exclusively within Defendant's possession and control. Plaintiff had no mechanism to compel its production before filing suit.

The Motion to Dismiss Count III and the related allegations in paragraphs 11 and 36 and the Wherefore Clauses is accordingly **DENIED**.

**B. Breach of Contract**

Defendant moves to dismiss Plaintiff's breach of contract claim as redundant and duplicative of the negligence claim such that the gist of the action doctrine bars it. The Court agrees.

Under Pennsylvania law, the gist of the action doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48 at 69-71 (Pa. 2014). The nature of the duty alleged to have been breached is the critical determinative factor. *See id.* at 63. If the duty breached is one created by the parties by the terms of their contract, the claim sounds in contract. *See id*. at 68. If the duty is one imposed by the broader law of torts and exists regardless of the contract, it must be regarded as a tort. *See id.* A contract in such a case is regarded merely as the vehicle that established the relationship between the parties during which the tort was committed. *See id.* at 68-69. The gist of the action doctrine bars claims where the alleged duties were created and grounded in the contract itself, or where the claim essentially duplicates a breach of contract or negligence claim. *See id.* at 67. The substance of the allegations comprising a claim, not the label a party affixes to it, determines whether gist of the action doctrine applies. *See Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 157–58 (W.D. Pa. 2020) (applying *Bruno*); *Battle Born Munitions Inc. v. Dick's Sporting Goods Inc.*, 2023 WL 4758449, at *3–4 (3d Cir. 2023) (same).

Count II as pleaded does not survive that inquiry. Paragraph 34 of the Complaint grounds Defendant's duties expressly in "the express and implied terms of the Rental Agreement," and the duties cataloged in Paragraph 42 of Count II are materially identical to those alleged in Count I.

The same failures of inadequate staffing, non-functional bed alarms, failure to supervise, and failure to maintain a safe environment appear in both counts in substantially identical terms. *See* Compl. ¶¶ 34, 42. Where a plaintiff's contract claim rests on the same facts and duties as her negligence claim, the negligence claim absorbs the contract claim. *See Kerlinsky v. Main Line Hosps., Inc.*, No. 10-04404, 2011 WL 3497303, at *3 (E.D. Pa. Aug. 9, 2011) (citing *Abraham v. Diguglielmo*, No. 06-0058, 2010 WL 2136600, at *11 (E.D. Pa. May 25, 2010)).

The gist of the action doctrine bars the claim as pleaded but does not extinguish all contract-based theories that might arise on these facts. The Pennsylvania Supreme Court acknowledged the inverse scenario: if a "duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018). Where a duty is independent of the contract, the contract is merely the vehicle that established the relationship during which the breach occurred. *See Bessemer*, 427 F. Supp 3d at 161. The Third Circuit reaffirmed in *Battle Born Munitions* that the critical question is always whether the duty breached arises from the contract or from a source of obligation independent of it. *See Battle Born*, 2023 WL 4758449, at *3-4.

The current pleading, which grounds both counts in identical duties and identical facts, cannot stand. *See Bruno*, 106 A.3d at 68-69; *Kerlinsky*, 2011 WL 3497303, at *3. Count II is **DISMISSED without prejudice**.[3] However, the Court will grant Plaintiff leave to amend Count II of the Complaint.

---

[3] The Court acknowledges that the Pennsylvania Supreme Court is revisiting *Bruno*. *See* Order, *Poteat v. Asteak*, No. 23 MAL 2026 (Pa. July 13, 2026) (granting petition for allowance of appeal on issues relating to *Bruno* and the gist of the action doctrine). But for now, *Bruno* is the law that this Court must apply. *See Barradas Jacome v. Att'y Gen. United States*, 39 F.4th 111, 124 (3d Cir. 2022).

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 17) is **GRANTED in part**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge